## Staunton

### VIRGINIA MANUFACTURERS ASSOCIATION v. WORKMEN'S COMPENSATION INSPECTION RATING BUREAU OF VIRGINIA.

September 11, 1964.

Record No. 5729.

Present, All the Justices.

*Frederick T. Gray* (*Williams, Mullen & Christian*, on brief), for the appellant.

*M. Wallace Moncure, Jr.* (*Moncure & Cabell,* on brief), for the appellee.

CARRICO, J., delivered the opinion of the court.

■ This matter is here upon an appeal of right granted the Virginia Manufacturers Association, which will be called the Association, from an order of the State Corporation Commission. The order complained of increased, from a limit of $100 to a limit of $300, the average weekly payroll used for the computation of premiums for workmen's compensation insurance.

The action of the Commission was prompted by an application of the Workmen's Compensation Inspection Rating Bureau of Virginia, which will be called the Bureau. The Bureau is an insurance rating organization licensed by the Commission pursuant to the provisions of Code, §§ 38.1-243 and 38.1-244. Its membership is composed of all of the insurance companies licensed to write workmen's compensation insurance in Virginia. Pursuant to Code, § 38.1-242, on behalf of its members, the Bureau annually files with the Commission, and seeks approval of, a schedule of rates to be charged in the ensuing year for workmen's compensation insurance.

The record shows that the occupations covered by workmen's compensation are divided into more than 650 separate classifications and that a rate for determining the premium for workmen's compensation insurance is fixed by the Commission for each such classification. The rate making process is complicated and technical. The statistical data required by the Commission to establish the proper rates is furnished by the Industrial Commission, pursuant to the provisions of Code, § 65-113.

Prior to 1946, the rate for a particular occupational class was applied to the total payroll of an employer for such class to determine the amount of his workmen's compensation insurance premiums. By an order dated July 7, 1946, the Commission established the $100 weekly payroll limitation rule, the effect of which, as described in the Commission's written opinion was, ". . . to exclude from the premium base that part of the payroll of each employee which was in excess of an average of $100 per week if the employer's books were maintained in such a manner to show this excess."

On April 4, 1963, the Bureau filed with the Commission its application for the approval of rates for the year commencing July 1, 1963.

Included in the application was a proposal to increase the weekly payroll limitation from $100 to $300 and, as a result of such increase, to make downward adjustments in the rates applicable to the various occupational classifications.

The Commission conducted a hearing in which the Bureau espoused the merits of its proposals and the Association voiced its objections thereto. Considerable testimony was taken and voluminous exhibits were introduced. Approval of the $300 weekly limitation, among other things, followed and the Association sought and was granted this appeal.

Although there are several assignments of error, the sole question presented is whether the Commission erred in ordering the increase in the weekly payroll limitation.

The Association contends that the effect of the increase in the weekly payroll limitation is to impose upon employers paying salaries in excess of $100 weekly an unfair portion of the cost of workmen's compensation insurance, causing them to pay a part of the premiums which should be borne by employers paying less than $100 weekly. The result, the Association asserts, is the taking of property without due process of law.

The Bureau contends, on the other hand, that because of the changes that have taken place since 1946, when the $100 limitation was adopted, the employers in the higher paying class were not bearing their fair share of the cost of such insurance under the $100 rule.

In considering the contentions of the respective parties, we must bear in mind that, ". . . the action of the Commission appealed from shall be regarded prima facie just, reasonable and correct . . . ." Constitution of Virginia, § 156 (f).

And, although the Association does not question the rates actually fixed by the Commission, it does attack the base to which those rates are to be applied. Since the establishment of a base in rate making is so inextricably related to the fixing of the rate, this case, then, is subject to the rule that, ". . . in reviewing the action of the Commission in fixing insurance rates, this court will not disturb its action unless it appears that it has exceeded its authority, or has acted unreasonably in exercising its authority, or that it has made a mistake of law, or that its finding is contrary to the evidence or without evidence to support it, or that it is fixed so low as to amount to confiscation . . . ." *Aetna Ins. Co.* v. *Commonwealth*, 160 Va. 698, 725, 169 S. E. 859.

Code, § 38.1-252, relating to the making of rates, tells the Commission that:

"[3] Due consideration shall be given to past and prospective loss experience within and outside this State, to conflagration or catastrophe hazards, to a reasonable margin for underwriting profit and contingencies, to dividends, savings or unabsorbed premium deposits allowed or returned by insurers to their policyholders or members or subscribers, to past and prospective expenses both country-wide and those specially applicable to this State, and to all relevant factors within and outside this State . . . ."

Turning now to the record before us, we must test the action of the Commission in the light of the rules and principles just set forth.

The Commission stated, in its written opinion, that the function of a payroll limitation rule is to measure, in a reasonable manner, the normal or expected exposure to hazard, risk by risk, of the insurance companies writing workmen's compensation coverage. The Commission found, however, from the evidence and its knowledge of conditions in Virginia, that because economic conditions had so changed and wage levels and the cost of workmen's compensation had so increased since the $100 limitation rule was adopted in 1946, the rule had ceased to measure, in a reasonably accurate manner, such exposure, risk by risk. The solution, so the Commission held, was to increase the payroll limitation to $300, to ". . . permit more payroll to flow into the rating system and thereby enable the rating system to measure more accurately, among insureds, the hazard of each risk on the basis of its own experience."

The Commission also stated that, ". . . as wage levels increase, more and more payrolls move out of the premium base under the $100 limitation with the result that the premiums of employers who pay high wages remain static while the premiums of other employers who have different wage-paying practices increase . . . . In many cases the $100 limitation imposed by the former rule is reached some time before the end of the employee's work week. The result is that the total premium paid is not proportional to the total exposure to injury during the work week." The Commission found that this situation resulted in discrimination.

The Commission also found that the change in payroll limitation was not introduced for the purpose of obtaining more premiums overall for workmen's compensation insurance, but, "to redistribute

more equitably among insureds the premium required to provide the statutory benefits."

The Commission further found that the $300 rule would result in savings since fewer records would be required; that an audit of the payroll records of a substantial number of Virginia employers and a country-wide study involving over 10½ billions of dollars of payroll disclosed that, under the $300 rule, a decrease in rate of 6.6 percent, to be spread among the various occupational classifications, should be ordered; that the effect of the increased payroll would be "cushioned" by a three-year transition plan, and that only seven states, other than Virginia, "now use the $100 payroll limitation rule."

In conclusion, the Commission stated that, ". . . if the $100 payroll limitation was reasonable in 1946, certainly, in view of what has happened in this country since then, a $300 payroll limitation is reasonable now."

We are of opinion that the Association has failed to show that the action of the Commission, taken upon competent evidence, after thorough study, in a field in which it is expert, was other than "just, reasonable and correct."

It is apparent, from the record and briefs before us, that the whole structure of rate making in the workmen's compensation field, not only in Virginia but throughout the country, rests upon the theory that payroll is a proper measure of exposure to the hazard to be insured against.

In this state, prior to 1946, as has been noted, the total payroll of the employer was used as the base to determine the premium. It was found that in some instances, where unusually high salaries were paid, excessive premiums were produced, thus resulting in hardship to those paying such high salaries. The policy of limiting the amount of payroll to be included in the base for premium computation was established to avoid such cases of hardship.

The $100 weekly limitation was reasonable when it was adopted in 1946, as the Commission stated, because it achieved the purpose of the payroll theory and effected the policy of the weekly limitation rule, that is, it properly channeled the total payroll of most employers into the base for premium computation while, at the same time, providing for relief against hardship in the small number of cases where such relief was necessary. In this connection, we are told that in 1946 only .06 percent of Virginia employees, or less than

one-tenth of 1 percent of Virginia payrolls, were excluded by the $100 limitation.

But by 1963, as the result of changed economic conditions, the $100 weekly limitation rule had become unreasonable, as the Commission held, because it then permitted an excessive amount of payroll to escape the premium base and created, rather than avoided, cases of hardship. In this connection, we are informed that in 1963, 25 percent of Virginia's employees were earning in excess of $100 weekly. The result of such change, as the Commission found, was to prevent the payroll from serving its proper function in the rate making process, that is, "to measure in a reasonable manner the normal or expected exposure to hazard, risk by risk."

The Commission, by its action, sought merely to adjust the premium base to the conditions it found to exist in 1963, so as to include in that base approximately the same percentage of total payroll as was included in such base in 1946 and, again, to exclude less than one-tenth of 1 percent of Virginia payrolls from the premium computation.

The Commission, by its action, moved to correct what it found to be inequities in its rating system, by requiring those employers to pay higher premiums who, as the Commission found, should be paying higher premiums and lessening the premium burden upon those who, as the Commission found, were entitled to relief.

In increasing the premium base, the Commission reduced the rates applicable to the various occupational classifications, such reduction varying from classification to classification according to the wage-paying practices of the industries represented. But, both the increase in base and the decrease in rates were made to apply equally to all members of the same classification. Under these circumstances, we cannot say that the Commission abused the discretion vested in it by law or that its action resulted in the taking of property of the members of the Association without due process of law. Accordingly, the order appealed from will be

*Affirmed.*